## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## HELENA DIVISION

**JIMMIE WILSON**                                                                        **PLAINTIFF**

**VS.**                          **CASE NO. 2:06-CV-00132-WRW**

**MIKE HUCKABEE, et al.**                                                         **DEFENDANTS**

### ORDER

This case was dismissed on Defendant's Motion because Plaintiff did not file a response.[1] Afterwards, Plaintiff filed a Motion for Reconsideration[2] and Motion to Set Aside the Order.[3] Two Orders[4] were entered setting a new date for Plaintiff to file his response to Defendants' Motion to Dismiss.[5] Plaintiff complied with the Order and filed a timely response.[6] For reasons stated below, the Defendants' Motion to Dismiss will be granted, in part, and denied, in part.

**I. Background**

Plaintiff filed a complaint against the State of Arkansas, the Arkansas Supreme Court, the State Board of Apportionment, the Governor of the State, the Attorney General, the Secretary of State, and all sitting Arkansas Supreme Court Justices, in their individual and official capacities. Plaintiff alleges that Arkansas's statewide election of Supreme Court Justices violates the Voting Rights Act ("VRA") as well as the Thirteenth, Fourteenth, and Fifteenth

---

[1] Doc. No. 14.

[2] Doc. No. 15.

[3] Doc. No. 18.

[4] Doc. Nos. 17, 21.

[5] Doc. No. 10.

[6] Doc. No. 22.

Dockets.Justia.com

Amendments to the United States Constitution.[7]  Plaintiff brings this action under 42 U.S.C. §§ 1981, 1982, and 1983, seeking declaratory and injunctive relief together with damages, costs, and attorneys' fees.

Defendants have moved to dismiss the lawsuit for the following reasons:  (1) Plaintiff's claim for damages against Defendants in their official capacities are barred by sovereign immunity, (2) Defendants sued in their individual capacities are entitled to qualified immunity, (3) Supreme Court Justices are entitled to absolute immunity, (4) Plaintiff fails to state claims for relief under §§ 1981 and 1982 because there are no allegations of interference with contract or property rights; (5) Plaintiff fails to state a claim for relief under § 1983 because there are no allegations that the named officials violated a constitutional or federal right, (6) Plaintiff failed to sue the proper parties in his VRA claim, and there are insufficient allegations to support this claim; (7) Plaintiff fails to state a Thirteenth Amendment claim for relief because there are no allegations of involuntary servitude; (8) Plaintiff fails to allege sufficient facts to support his claim that Defendants violated his rights under the Fourteen and Fifteenth Amendments by intentionally maintaining a discriminatory election process.

## II.  Motion to Dismiss Standard

In ruling on a motion to dismiss under Rule 12(b)(6), this Court must take Plaintiff's well-pleaded factual allegations as true.[8]  A motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would

---

[7]Doc. No. 1.

[8]*Veal v. First Am. Sav. Bank*, 914 F.2d 909, 913 (7th Cir. 1990); *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987).

entitle him to relief.[9] But, the complaint must contain facts, not mere conclusions, and a court is not "required to read in missing facts necessary to perfect the claim."[10]

**III. Authority**

    **A. Claims under § 1983**

Section 1983 permits a civil action against persons who, under color of law, deprive a citizen of his rights, privileges, or immunities secured by the Constitution and laws of the United States.[11] In this case, Plaintiff alleges that Defendants violated his rights under the Thirteenth, Fourteenth, and Fifteenth Amendments.

In a § 1983 suit, Plaintiff must prove that an individual, acting under color of law, violated his Constitutional rights. An allegation of negligent conduct is not enough to state a claim.[12]

Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause of the Fourteenth Amendment.[13] Official action will not be held unconstitutional solely because it results in a racially disproportionate impact. Although discriminatory impact is relevant, standing alone, it does not show invidious racial discrimination.[14] The Due Process Clause of the Fourteenth Amendment also requires an intentional deprivation of life, liberty, and property interests.[15]

---

[9] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[10] *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir. 2002).

[11] *Hannon v. Sanner*, 441 F.3d 635, 636 (8th Cir. 2006).

[12] *Daniels v. Williams*, 474 U.S. 327, 330 (1986).

[13] *Village of Arlington Heights v. Metropolitan Housing*, 429 U.S. 252, 265 (1977).

[14] *Washington v. Davis*, 426 U.S. 229, 242 (1976).

[15] *Britt v. Little Rock Police Dep't*, 721 F. Supp. 189, 192 (E.D. Ark. 1989).

A § 1983 action against individual defendants for violation of the Fifteenth Amendment must allege that the individuals engaged in racially motivated practices.[16]

The Thirteenth Amendment abolished the institution of slavery as it existed at the time of the Civil War, as well as other forms of compulsory labor.[17]

Certain immunities are recognized when individuals are sued for damages under § 1983. The Eleventh amendment prohibits damage claims against states, unless a state has waived its sovereign immunity.[18] Judges are entitled to absolute immunity if the allegations involve duties that are an "integral part of the judicial process."[19] Individuals are not liable under § 1983 simply because they employed or supervised someone who was guilty of a Constitutional violation. The doctrine of *respondeat superior* does not apply.[20] Finally, Government officials are not liable for civil damages if their conduct did not violate clearly established statutory or Constitutional rights.[21]

### B. Claim under § 1981 and § 1982

Sections 1981 and 1982 protect the rights of individuals to make and enforce contracts and to purchase personal and real property without discrimination based on race. A plaintiff establishes a *prima facie* case under § 1981 by showing (1) membership in a protected class; (2) the intent to

---

[16]*Taylor v. Howe*, 225 F.3d 993 (8th Cir. 2000).

[17]*United States v. Kozminski*, 487 U.S. 931, 942 (1988).

[18]*Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989).

[19]*Briscoe v. LaHue*, 460 U.S. 325 (1983).

[20]*Hughes v. Stottlemyre*, 454 F.3d 791 (8th Cir. 2006 ) (it is well settled that § 1983 does not impose *respondeat superior* liability) citing *Crawford v. Davis*, 109 F.3d 1281, 1284 (8th Cir. 1997)).

[21]*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a rights or benefits connected to making and enforcing contracts.[22] The *prima facie* elements of a § 1982 case are similar, requiring (1) membership in a protected class; (2) discriminatory intent on the part of the defendant and (3) interference with the rights or benefits connected with the ownership of property.[23]

### C.  Voting Rights Act of 1965

The Voting Rights Act of 1965[24] was enacted "to banish the blight of racial discrimination in voting" in the United States.[25]   Section 2 of the Act,[26] focuses on doing away with artificial prerequisites that prevent minorities from participating in elections.  The basis for a Section 2 claim is that certain electoral laws and practices interact with social and historical conditions to cause voting inequality in the election of preferred representatives.[27]

To establish a violation of Section 2, plaintiffs do *not* have the burden of proving discriminatory intent.[28]   A violation of Section 2 can be established by proof of discriminatory impact alone.[29]  Section 2 of the Act provides, in relevant part:

---

[22]*Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004).

[23]*Daniels v. Dillard's Inc.*, 373 F.3d 885, 887 (8th Cir. 2004).

[24]42 U.S.C. §§ 1971-1974(e).

[25]*South Carolina v. Katzenbach,* 383 U.S. 301, 308 (1966).

[26]42 U.S.C. § 1973.

[27]*Thornburg v. Gingles*, 478 U.S. 30 (1986).

[28]*Chisom v. Roemer*, 501 U.S. 380, 403 (1991) (emphasis added).

[29]*Id.* at 404.

> A violation of . . . this section is established if, based on the totality of the circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected [by] . . . this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.[30]

Until 1991, courts disagreed over the application of Section 2 to elections of judges. The Supreme Court resolved these differences with its decision in *Chisom v. Roemer*,[31] holding that elections of judges by popular vote are covered by Section 2.[32]

The Supreme Court has held that, although multimember and at-large election schemes minimize the voting strength of racial minorities, the schemes are not *per se* violations of minority voter rights.[33] Plaintiffs challenging at-large elections under Section 2 must demonstrate three prerequisites before their claims will be evaluated at length: (1) that the minority group is sufficiently large and geographically compact to constitute a majority in a hypothetical single-member district carved out from the at-large district; (2) that the group is politically cohesive; and (3) that the majority voter bloc is sufficiently cohesive to allow it, as a rule, to defeat the minority's preferred candidates.[34] In short, bloc voting by the majority must usually be able to defeat a candidate supported by a cohesive and insular minority group.[35]

**IV. Discussion**

---

[30]42 U.S.C. § 1973(b).

[31]501 U.S. 380 (1991).

[32]*Chisom*, 501 U.S. at 404 (1991).

[33]*Thornburg v. Gingles*, 478 U.S. 30, 47-48 (1986).

[34]*Id.* at 50-51.

[35]*Id.*

Plaintiff, a lawyer residing in Phillips County, brings this action *pro se.* He alleges that as a voter and a lawyer who practices before the Arkansas Supreme Court, his vote has been diluted by the current at-large election system of Arkansas Justices, and that he is deprived of his right to select a Justice of his choice. Plaintiff alleges that this violates his constitutional rights under the Thirteenth, Fourteenth, and Fifteenth Amendments, and that he is entitled to damages under 42 U.S.C. §§ 1983, 1981, and 1982.

Plaintiff alleges that the Supreme Court Justices' actions are tainted by a discriminatory election process which violates the Fourteenth Amendment because African-Americans are denied the right to have a meaningful voice in the election of the Justices. The Justices are absolutely immune from § 1983 claims involving their power to decide appeals, because these duties are "integral part of the judicial process."[36] Even if the Justices were not immune from this suit, Plaintiff's § 1983 claims fail because there are no allegations of intentional conduct on the part of any of the Defendants.

In order to state a claim for a Fourteenth Amendment violation under § 1983, Plaintiff must allege that Defendants engaged in a practice that was motivated by discrimination and intentionally designed to exclude African-Americans from sitting on the Supreme Court of Arkansas. Plaintiff makes no such factual allegations against Defendants; nor does he allege that they intentionally or recklessly engaged in any conduct that violated the Due Process and Equal Protection clauses of the Fourteenth Amendment.[37]

The same is true for a Fifteenth Amendment claim under § 1983. In order to bring an action against individuals, Plaintiff must allege conduct that was designed to deny

---

[36]*Briscoe v. LaHue*, 460 U.S. 325 (1983).

[37]*Village of Arlington Heights*, 429 U.S. at 265.

African-Americans the vote.[38]  Plaintiff did not do this.  Finally, the Thirteenth Amendment claim fails because there are no allegations that Defendants attempted to impose involuntary servitude on African-Americans.[39]

The claims based on 42 U.S.C. §§ 1981 and 1982 fail because there are no allegations that Defendants interfered with Plaintiff's contract or property rights.  Like § 1983, these two sections also require allegations of intentional discriminatory conduct.  As stated above, there are no such allegations in this complaint.[40]

Now I must decide whether Plaintiff alleged a violation of Section 2 of the VRA so as to withstand dismissal under Rule 12(b)(6).  Defendants assert that Plaintiff has not pled facts that an African-American majority voting district could be constitutionally created within the state of Arkansas.[41]

This argument is not strong enough to warrant dismissal.  As stated, a motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.

---

[38]*Taylor*, 225 at 1005 (finding that the conduct of poll workers and other election officials had to be shown to be racially motivated).

[39]*Kozminski*, 487 U.S. at 942.

[40]*Daniels*, 373 F.3d at 887.

[41]Doc. No. 11-1.

Cases under Section 2 require a "searching practical evaluation" of the "past and present reality" surrounding voting practices in light of the totality of facts and circumstances.[42] No "searching" evaluation is possible on the record as it currently stands.[43]

In addition to setting out three preconditions to a Section 2 claim, the Court in *Gingles* also discussed a list of factors that support such claims. These factors include: (1) the history of official discrimination; (2) "the extent to which the minority group bears the effects of discrimination"; and (3) "the extent to which members of the minority group have been elected to public office."[44]

Plaintiff alleges that Arkansas has a history of racial discrimination, and alleges that no African-American has ever been elected to the Supreme Court, whereas African-Americans have been elected to the Arkansas Court of Appeals where judges are elected from districts rather than in state-wide elections. These allegations are sufficient to meet the pre-conditions of *Gingles*.

The allegations that African-Americans have been elected to the Court of Appeals and not to the Supreme Court are sufficient to raise inferences that: (1) the minority group is sufficiently large and geographically compact to constitute a majority in districts carved out for the election of Judges to the Court of Appeals; (2) African-Americans are politically cohesive in districts where African-American candidates have been elected to the Court of Appeals; and (3) the majority voter bloc is sufficiently cohesive to defeat the minority preferred candidates for the Supreme Court of Arkansas in statewide, at-large elections.[45] Plaintiff states a claim for a Section 2 violation of the VRA.

---

[42]*McNeil v. Springfield Park Dist.*, 851 F.2d 937, 940 (7th Cir. 1988).

[43]See *McNeil*, 851 F.2d at 940.

[44]*Gingles*, 478 U.S. at 36-37.

[45]*Id.* at 50-51.

Defendants also argue that Plaintiff has not sued the proper parties under the VRA. The VRA prohibits a state or political subdivision from engaging in any practices which deny or abridge a citizen's right to vote on the basis of race.[46] The Act defines "political subdivision" as "any county or parish . . . [or] any other subdivision of a State which conducts registration for voting."[47]

Plaintiff has sued Supreme Court Justices and other state officials. Because Plaintiff fails to state claims for individual liability under either the VRA or § 1983, these Defendants are not proper parties in this case, and will be dismissed

Based on the language of the VRA, the State of Arkansas is a proper party, and the State Board of Apportionment meets the definition of state subdivision. Moreover, the Arkansas Supreme Court has held that "the Board of Apportionment is the proper authority to undertake reapportionment as ordered by a Federal District Court."[48]

**IV. Conclusion**

In view of the above, Plaintiff's Motion for Reconsideration is GRANTED. Plaintiff's Motion to Set Aside the Order is GRANTED and the Order[49] Dismissing Plaintiff's case is VACATED. Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

Plaintiff's claims based on 42 U.S.C. § 1983 and the Thirteenth, Fourteenth, and Fifteenth Amendments are DISMISSED. Plaintiff's claims based on 42 U.S.C. §§ 1981 and 1982 are DISMISSED. Plaintiff claims against the Governor, the Secretary of State, the Attorney General, and the individual Justices of the Supreme Court are DISMISSED.

---

[46] 42 U.S.C. § 1973 (a).

[47] 42 U.S.C. § 1973 (c)(2).

[48] *Faubus v. Kinney*, 239 Ark. 443, 450 (1965).

[49] Doc. No. 14.

Defendants' Motion to Dismiss the Voting Rights Act claim is DENIED. The State of Arkansas and the Board of Apportionment remain as Defendants.

IT IS SO ORDERED this 30th day of March 2007.

>                /s/ Wm. R.Wilson,Jr.
>                UNITED STATES DISTRICT JUDGE