IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

JIMMIE WILSON                                                                                    PLAINTIFF

v.                                         2:06CV00132-WRW

MIKE HUCKABEE, GOVERNOR & CHIEF
EXECUTIVE OFFICER OF THE STATE OF
ARKANSAS, AS A SOVEREIGNTY IN HIS
OFFICIAL CAPACITY, AND IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY
AS A MEMBER OF THE STATE BOARD OF
APPORTIONMENT, *et al.*                                                            DEFENDANTS

## ORDER

Pending is Defendants' Motion for Summary Judgment (Doc. No. 45). Plaintiff has not responded, and the time for doing so has passed. (Plaintiff's response was due on January 9, 2008.) For the reasons set out below, Defendants' Motion is GRANTED.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[1] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[2]

---

[1] *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[3] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[4] I must view the facts in the light most favorable to the party opposing the motion.[5] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, "[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[6]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[7]

---

[3] *Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[4] *Id.* at 728.

[5] *Id.* at 727-28.

[6] *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[7] *Anderson*, 477 U.S. at 248.

**II. BACKGROUND**

Plaintiff's Complaint outlines the history of Arkansas's various constitutions, in particular in connection with the rights of African American citizens.[8] Plaintiff contends that "the confederate constitution of 1861 is in fact the policy maker and law of the land as it relates to the consideration of African Americans being eligible to serve on the Arkansas Supreme Court."[9] Under the Arkansas Constitution as it stands today, Arkansas Supreme Court Justices "shall be elected on a nonpartisan basis by a majority of qualified electors voting for such office."[10] Plaintiff asserts that the system for electing justices to the Supreme Court dilutes African American votes "to the extent that [African American voters] could 'never' elect an African American member to the Arkansas Supreme Court."[11] Plaintiff alleges that the "statewide election of Arkansas Supreme Court justices violates the 14th Amendment rights of the plaintiff to equal protection and is therefore unconstitutional *per se"* and violates the Voting Rights Act of 1965, as amended.[12] Defendant maintain that the system for electing Arkansas Supreme Court Justices is constitutional.[13]

---

[8]*Id.*

[9]*Id.* Plaintiff states that "no persons of African descent was recognized as a human being and was therefore eliminated from the consideration of citizenship inclusive of the right to vote and/or hold any judicial office in the State of Arkansas under the confederate constitution for the state of arkansas 1861 through 1864" and that "the confederate constitution of 1861 through 1864 [] prohibited African Americans from the thought of holding an office fartherless becoming a member of the confederate arkansas supreme court." *Id.*

[10]ARK. CONST., AMEND. 80. "The following sections of Article 7 of the Constitution of the State of Arkansas are hereby repealed effective July 1, 2001; 1 through 18; 20 through 22; 24; 25; 32; 34; 35; 39; 40; 42; 44; 45 and 50." *Id.*

[11]*Id.*

[12]Doc. No. 1.

[13]Doc. No. 46.

**III. DISCUSSION**

Section 2 of the Voting Rights Act of 1965, as amended, prohibits any "voting qualification or prerequisite to voting or standard, practice, or procedure . . ." that denies or abridges "the right of any citizen of the United States to vote on account of race or color . . . ."[14] A plaintiff can show a violation of his rights if "based on the totality of circumstances, it is shown that the political processes leading to a nomination or election in the State or political subdivision are not equally open to" minorities.[15] "The critical question in a § 2 claim is whether the use of a contested electoral practice or structure results in members of a protected group having less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."[16]

To succeed in a § 2 claim, a plaintiff must show that: "(1) the minority group is sufficiently large and geographically compact to constitute an effective majority in a single-member district; (2) the minority group is politically cohesive; and (3) the majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate."[17] After a plaintiff shows these conditions exist, the plaintiff must then demonstrate that, under the totality of the circumstances, the challenged electoral system diluted minority votes by denying minority voters the same opportunity enjoyed by non-minorities to participate in the political process and

---

[14] 42 U.S.C. § 1973(a).

[15] 42 U.S.C. § 1973(b).

[16] *Thornburg v. Gingles*, 478 U.S. 30, 63 (1986) (citing S. Rep., at 2, 27, 28, 29, n.118, 36).

[17] *Stabler v. County of Thurston*, 129 F.3d 1015, 1020-21 (8th Cir. 1997) (citing *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986)).

elect representatives of their choice.[18]  This analysis applies to a § 2 claim in either a multi-member or single-member districting scheme.[19]

### A. The Effective Majority Requirement

Plaintiff must show that there is a "proper and workable" remedy[20] to the alleged unconstitutional system, under which African Americans make up a majority in a single-member

---

[18]See *id* at 1021. Factors to be considered in deciding if, under the totality of the circumstances, the minority vote was diluted because minority voters were denied equal opportunity include:
> (1) a history of official discrimination in the political subdivision that touched the right of minority group members to register, vote, or otherwise participate in the democratic process; (2) the extent to which voting in the elections of the political subdivision is racially polarized; (3) the political subdivision's use of unusually large election districts, majority-vote requirements, anti-single shot provisions (discouraging voters from using only one of their multiple votes), or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group; (4) whether the minority group members have been denied access to a candidate-slating process, where one exists; (5) the extent to which minority group members in the political subdivision bear the effects of discrimination in such areas as education, employment, and health which hinder their ability to participate effectively in the political process; (6) whether political campaigns have been characterized by overt or subtle racial appeals; and (7) the extent to which minority group members have been elected to public office in the jurisdiction. Additional factors that may be probative of vote dilution are: (8) whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group and (9) whether the policy underlying the political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice, or procedure is tenuous.

*Id.* (citing *Thornburg v. Gingles*, 478 U.S. 30, 36-37 (1986)).

[19]*African Am. Voting Rights Legal Defense Fund v. Villa*, 54 F.3d 1345, 1342 (8th Cir. 1995) (citing *Growe v. Emison*, 113 S. Ct. 1075, 1083-84 (1993)).

[20]*Cottier v. City of Martin*, 445 F.3d 1113, 1117 (8th Cir. 2006).

district.[21] Beyond references to the voting districts used in electing justices to the Arkansas Court of Appeals,[22] Plaintiff has not submitted any redistricting plan or alternate electoral scheme in support of his arguments. Plaintiff has not shown that there exists a workable remedy where African Americans would constitute a majority in any district.

### B. The Politically Cohesive Requirement

"Evidence of political cohesiveness is shown by minority voting preferences, distinct from the majority, demonstrated in actual elections . . . ."[23] Both statistical and non-statistical evidence must be used in proving political cohesiveness.[24]

Plaintiff has submitted no evidence proving political cohesiveness. The record shows that, out of the twelve statewide elections analyzed, African American voters "almost always" voted for the identical candidate as white voters.[25] Because the only evidence in the record indicates that African Americans do not necessarily vote differently when compared to the white majority, Plaintiff cannot show political cohesiveness.

### C. Majority Block Voting

---

[21]*Gingles*, 478 U.S. 51 n.17. The United States Supreme Court explained that the reason a plaintiff must show effective majority in a single-member district is because "[u]nless minority voters possess the potential to elect representatives in the absence of the challenged . . . practice, they cannot claim to have been injured by that . . . practice." *Id.* Thus, if a minority cannot constitute a majority in a single-member district, the minority cannot "maintain that they would have been able to elect representatives of their choice . . . ." See *id*.

[22]Doc. No. 1.

[23]*Cottier*, 455 F.3d at 1118.

[24]*Id*. (citing *Growe v. Emison*, 507 U.S. 25, 41 (1993)).

[25]Doc. No. 46. See Doc. No. 46, Ex. B-2.

The degree to which voting is polarized is relevant in a vote dilution claim.[26] A plaintiff may show majority block voting by demonstrating that the majority "normally will defeat the combined strength of minority support plus white 'crossover' votes."[27]

The record does not indicate that the white majority usually defeats the minority's preferred candidate.[28] Plaintiff established none of the necessary elements of a § 2 claim. Since Plaintiff has not established any of the three initial elements, Plaintiff cannot possibly prove vote dilution under the totality of the circumstances.

**IV. CONCLUSION**

Because Plaintiff did not show the required elements to prove that a violation of § 2 occurred, Defendants' Motion for Summary Judgment is GRANTED and this case is DISMISSED with prejudice.

IT IS SO ORDERED this 8th day of February, 2008.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[26]*Gingles*, 478 U.S. at 55.

[27]*Id.* at 56.

[28]Doc. No. 46.